BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
ELAINE A. RYAN (*To be admitted Pro Hac Vice*)
PATRICIA N. SYVERSON (203111)
LINDSEY M. GOMEZ-GRAY (*To be admitted Pro Hac Vice*)
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
eryan@bffb.com
psyverson@bffb.com
lgomez-gray@bffb.com
Telephone:   (602) 274-1100

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
TODD D. CARPENTER (234464)
600 W. Broadway, Suite 900
San Diego, California 92101
tcarpenter@bffb.com
Telephone:  (619) 756-6978

[additional counsel appear on signature page]

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YARITZA VIZCARRA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CARTER'S INC., a Delaware Corporation;  and THE WILLIAM CARTER COMPANY, a Massachusetts Corporation,<br><br>Defendants. | Case No.: **'12CV2847 JLS  WVG**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. VIOLATION OF THE UNFAIR COMPETITION LAW, Business and Professions Code §17200 *et seq.*; and<br>2. VIOLATION OF CONSUMERS LEGAL REMEDIES ACT, Civil Code §1750 *et seq.*<br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiff Yaritza Vizcarra brings this action on behalf of herself and all others similarly situated against Defendants Carter's Inc. and the William Carter Company (collectively, "Defendants") and alleges as follows:

**NATURE OF THE ACTION**

1. Defendants distribute, market and sell crib bumpers under their brand name "Carter's."[1] Consumers purchased Carter's Crib Bumpers based on the belief that the bumpers were safe as represented for installation in their child's crib to protect against various crib related injuries. In truth, Carter's Crib Bumpers actually put children at greater risk for suffocation or crib death.

2. Despite the evidence that these bumpers are not safe and pose a risk of serious injury and death, Defendants have turned a blind eye to the dangers posed by Carter's Crib Bumpers in order to maintain sales and profits, and continue to sell their products. In selling their crib bumpers to Plaintiff and the Class, Defendants have knowingly concealed these serious risks and affirmatively misrepresented that Carter's Crib Bumpers are safe if properly installed. Thus, by purchasing one of Defendants' Carter's Crib Bumpers, Plaintiff and each member of the Class were injured by Defendants' conduct because they paid for a Carter's Crib Bumper they would not have purchased had they known the risks these crib bumpers posed to their children.

3. Defendants' goal was to deceive consumers about the safety of Carter's Crib Bumpers and to reap significant financial rewards through their unlawful conduct to the

---

[1] For purposes of this complaint "Carter's Crib Bumpers" refers collectively to all crib bumpers sold alone or in a set under the Carter's brand name including, but not limited to: Sunny Safari Crib Bumper; Carter's Jungle Jill Crib Bumper; Carter's Monkey Rockstar Bumper; Carter's Wild Life Crib Bumper; Super Soft Crib Bumper; Super Soft Dot Crib Bumper; Baby Bear Crib Bumper; Carter's Blue Elephant 4-Piece Crib Bedding Set; Carter's Pink Elephant 4-Piece Crib Bedding Set; Carter's Garden Party 4-Piece Crib Bedding Set; and Carter's Meadowlark 4-Piece Crib Bedding Set. Plaintiff reserves the right to include other crib bumper products upon completion of discovery.

- 2 -

detriment of Plaintiff and the Class.  Defendants have succeeded.  Infant bedding sales exceed $50 million annually — a number that includes over 200,000 crib bumpers.[2]

4. Plaintiff brings this action on behalf of herself and other similarly situated consumers who have purchased Carter's Crib Bumpers to halt the dissemination of this false, misleading and deceptive advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased Carter's Crib Bumpers.  Plaintiff alleges violations of the Consumers Legal Remedies Act and the Unfair Competition Law created by Defendants' advertising, including false labeling.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and some of the members of the class are citizens of states different from Defendants.

6. This Court has personal jurisdiction over Defendants because Defendants are authorized to conduct and do business in California.  Defendants have marketed, promoted, distributed, and sold Carter's Crib Bumpers in California and Defendants have sufficient minimum contacts with this State and/or sufficiently avail themselves of the markets in this State through their promotion, sales, distribution and marketing within this State to render the exercise of jurisdiction by this Court permissible.

7. Venue is proper in this Court because Defendants transact substantial business in this District.

## PARTIES

8. At all material times, Plaintiff Yaritza Vizcarra was and still is a citizen of the state of California.  In or around approximately April 2010, while visiting relatives in

---

[2] Jayne O'Donnell, *Pediatrics Group Says No To Crib Bumpers*, USA TODAY (Oct. 18, 2011), *available at* http://www.usatoday.com/money/industries/retail/ story/2011-10-18/crib-bumpers/50817722/1.

Arizona, Plaintiff purchased one of Defendants' Carter's Crib Bumpers from a Wal-Mart in Laveen, Arizona. Plaintiff bought and used the Carter's Crib Bumper in her California home believing that it was safe, and most certainly would not pose a risk of crib death.

9. Defendant Carter's Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business at 1170 Peachtree St. NE, Ste. 900 Atlanta, Georgia 30309. Carter's Inc. is one of the largest branded marketers of apparel and related products for infants and children in the United States. Carter's Inc. owns the "Carter's" brand, one of the most recognized brands in the country. Carter's Inc. distributes, markets, labels, packages and/or sells Carter's Crib Bumpers to tens of thousands of consumers nationwide.

10. Defendant The William Carter Company ("WCC") is a Massachusetts corporation with its principal place of business at 1170 Peachtree St. NE, Ste. 900 Atlanta, Georgia 30309. WCC is the wholly owned subsidiary of Carter's Inc. WCC distributes, markets, labels, packages and/or sells Carter's Crib Bumpers to tens of thousands of consumers nationwide.

11. Plaintiff is informed and believes, and thus alleges, that at all times herein mentioned, each of the Defendants was the agent, employee, representative, partner, joint venturer, and/or alter ego of the other Defendant and, in doing the things alleged herein, was acting within the course and scope of such agency, employment, representation, on behalf of such partnership or joint venture, and/or as such alter ego, with the authority, permission, consent, and/or ratification of the other Defendant.

## FACTUAL BACKGROUND

*The Carter's Crib Bumpers*

12. Defendants are among the leading designers, manufacturers and distributors of infant and toddler consumer products, including bedding, furniture, blankets and other nursery accessories. This lawsuit concerns one of those products – Carter's Crib Bumpers.

13. A crib bumper is a padded cushion that fits around the inside of a baby's crib and is usually affixed to the crib by ties around several slats. Crib bumpers are available in many different styles and are often coordinated to match other bedding. Crib bumpers are sold separately or as part of a bedding collection. The following are illustrative examples of Defendants' Carter's Crib Bumpers:

 

14. Defendants' Carter's Crib Bumpers are sold online and in a variety of third-party retailers, including Target, Babies-R-Us and Wal-Mart. Carter's Crib Bumpers sold alone retail for approximately $40.00 to $70.00. Carter's Crib Bumpers sold as part of bedding set retail for approximately $175.00.

15. Through their advertising, including the Carter's Crib Bumpers' packaging and labeling, Defendants affirmatively represent that the products are safe if properly installed. This is false. As discussed below, crib bumpers pose serious health risks, even the risk of infant death. Defendants' Carter's Crib Bumper representations are false, misleading and reasonably likely to deceive the public.

16. Defendants fail to disclose the true risks associated with Carter's Crib Bumpers. In fact, Defendants' Carter's Crib Bumpers warning merely advises consumers that to prevent strangulation or suffocation, the consumer needs to properly secure the

bumper and, when children can sit up or pull themselves to a seated position, the bumper should be removed:



17. This statement not only fails to disclose the true risks that accompany the use of Carter's Crib Bumpers, it also implies that by following Defendants' instructions, use of their Carter's Crib Bumpers is safe.

18. Defendants reaffirm this deceptive message by enclosing a "naptime to nighttime information sheet" created by the Juvenile Products Manufacturers Association ("JPMA").[3] While the "information sheet" recommends removing "pillows, sheepskins, pillow-like stuffed toys and products not intended as infant bedding from the crib when infants are sleeping," it does not recommend removing the crib bumper when the baby is sleeping. Instead, the "information sheet" makes the following representations regarding bumper pads under the enlarged, bold faced heading "infant bedding safety":

> • When using bumper pads avoid those that are pillow-like. Bumper pads must fit properly in your crib and tie or snap securely into place. Bumper ties MUST NOT exceed nine inches. Make sure the bumper pad can be secured along the sides of the crib.

---

[3] JPMA is a trade organization that represents 250 companies in the United States, Canada, and Mexico who manufacture, import and/or distribute infant products, cribs, car seats, strollers, bedding, and a wide range of accessories and decorative items.

- Use bumper pads only until the child can pull up to a standing position. Then remove them so baby cannot use the pads to climb out of the crib.

- Many bumpers are now sold in four pieces. For each bumper segment, if all ties on that segment cannot be securely attached to the crib DO NOT USE the bumper segment.

19. Defendants have affirmatively misrepresented that their Carter's Crib Bumpers are safe if properly installed. Defendants have also engaged in deception by concealment, in that they have concealed from Plaintiff and the Class that Carter's Crib Bumpers pose serious health risks and even the risk of infant death.

### *Carter's Crib Bumpers Are Not Safe*

20. Crib bumpers became popular in older-style cribs that featured slats far enough apart that a baby's head could become trapped between them, thereby posing a suffocation risk. Today, however, all cribs sold in the United States mandate less space between slates (approximately 2 and 3/8 inches). These narrowed slates are so close together that it is virtually impossible for a baby's head to fit through the slats.

21. Despite the modern, safer design of cribs, sales of crib bumpers persist. Infant bedding sales exceed $50 million per year — a number that includes over 200,000 crib bumpers. These high sales continue because manufacturers and distributors of crib bumpers, including Defendants, perpetuate the falsehood that crib bumpers eliminate risk of injury or death in the crib environment. The opposite is true: crib bumpers are themselves a hazard, totally superfluous and unneeded – and, at best, worthless.

22. In fact, according to the Centers for Disease Control and Prevention, in 2009 alone, 665 babies died from accidental suffocation or strangulation while in bed.

23. Numerous organizations, especially Sudden Infant Death (SIDS) awareness groups warn that crib bumper pads are not safe and may increase risk of accidental suffocation. In October 2011, the American Academy of Pediatrics ("AAP") issued a specific warning about crib bumpers: "bumper pads should not be used in cribs. There is no evidence that bumper pads prevent injuries, and there is a potential risk of suffocation,

strangulation or entrapment."[4] The AAP, therefore, recommends that parents "keep soft objects or loose bedding out of the crib. This includes pillows, blankets, and bumper pads." Other groups have voiced similar concerns, including: Health Canada,[5] the Consumer Product Safety Commission,[6] the First Candle/National SIDS Alliance,[7] and the National Institute of Child Health & Human Development.[8]

24. The FDA also recommends against the use of baby bumpers in cribs. According to the FDA, the best way to reduce the chance of SIDS is to create a safe sleep environment for a baby, which includes, *inter alia*, placing a baby in "a crib or bassinet free of pillows, blankets, bumpers, sleep positioners, and other objects."[9]

25. The primary reason why these and other child safety organizations recommend against crib bumpers is that they pose a risk of suffocation. Just like a pillow or thick blanket, crib bumper pads can restrict a baby's breathing if the bumper is next to the baby's nose or mouth. Suffocation risk is greatest when babies are very young and unable to move themselves away from potential hazards.

26. Crib bumpers can also cause strangulation. Babies can become entangled in the crib bumper or its ties, or can get between the bumper and the crib and suffocate.

27. Re-breathing of stale air is yet another concern with crib bumper pads. The bumper reduces the flow of fresh air around a baby during sleep, particularly if his or her face is very close to the bumper. The AAP suggests that some infants, when overheated or

---

[4] *AAP Expands Guidelines for Infant Sleep Safety and SIDS Risk Reduction*, http://www.healthychildren.org/english/news/pages/aap-expands-guidelines-for-infant-sleep-safety-and-sids-risk-reduction.aspx (last visited Nov. 27, 2012).
[5] *Policy Statement for Bumper Pads*, HEALTH CANADA (Aug. 17, 2005), http://www.hc-sc.gc.ca/cps-spc/legislation/pol/bumper-bordure-eng.php.
[6] *Crib Safety Tips - Use Your Crib Safely*, CONSUMER PRODUCT SAFETY COMMISSION, http://www.cpsc.gov/CPSCPUB/PUBS/5030.html (last visited Nov. 27, 2012).
[7] *Create a Safe Sleep Zone*, FIRST CANDLE, http://www.firstcandle.org/new-expectant-parents/bedtime-basics-for-babies/create-a-safe-sleep-zone (last updated July 21, 2011).
[8] *Safe Sleep for Your Baby: Reduce the Risk of Sudden Infant Death Syndrome (SIDS)*, NAT'L INST. OF HEALTH, http://www.nichd.nih.gov/publications/pubs/ safe_sleep_gen.cfm (last updated Aug. 13, 2008).
[9] *Baby Products with SIDS Prevention Claims*, http://www.fda.gov/MedicalDevices/ProductsandMedicalProcedures/SIDSPreventionClaims/default.htm (last visited Nov. 27, 2012).

- 8 -

who lack sufficient oxygen during sleep, are unable to arouse themselves enough to prevent death. Re-breathing of stale air may be a contributing factor to SIDS.[10]

28. Recent studies affirm that crib bumper pads (including those that are non-pillow-like and with ties of nine inches or less) are hazardous to a baby's health even when installed as directed. For example, a 2007 study – Thach, B., *et al.*, Deaths and Injuries Attributed to Infant Crib Bumper Pads, 151(3) J. of Pediatrics 271-274 (September 2007) – examined deaths and injuries attributed to bumper pads. The study authors found that between the years 1985 to 2005, 27 accidental deaths of children (ages 1 to 2 years) were attributed to bumper pads that caused the children to suffocate either by becoming wedged against a padded bumper or strangled by the bumper ties. The study authors concluded that "crib and bassinet bumpers are dangerous," "prevent only minor injuries" and, as such, "should not be used."

29. In light of serious risks associated with crib bumpers, in September 8, 2011, Chicago banned the sale of crib bumpers in stores. Other states, including Maryland, are considering similar bans.

### The Impact of Defendants' Wrongful Conduct

30. As detailed above, Defendants deceptively marketed, advertised, packaged, labeled and otherwise promoted Carter's Crib Bumpers as safe.

31. As the distributor of the products, Defendants possess specialized knowledge regarding the safety of Carter's Crib Bumpers and are in a superior position to learn of the safety issues – and have learned of the safety concerns – their products have on consumers.

32. Specifically, Defendants knew or should have known, but failed to disclose, *inter alia,* that Carter's Crib Bumpers should not be used in cribs and there is no evidence

---

[10] Timothy Begany, *AAP Renews Effort to Reduce SIDS Rate* (June 2000), http://www.respiratoryreviews.com/jun00/rr_jun00_aapguidelines.html.

that bumper pads prevent injuries, but instead, they create the risk of suffocation, strangulation and entrapment.

33. Instead, Defendants caused the true risks of Carter's Crib Bumpers to be concealed from the public, by *inter alia*, engaging in a nationwide marketing and advertising campaign falsely touting the safety of the Products if installed as directed on the package.

34. Plaintiff was misled by Defendants' marketing and advertising campaign, including the packaging and labeling, which tout Carter's Crib Bumpers as safe, when in fact they are not. Plaintiff purchased and used a Carter's Crib Bumper product during the Class period and in doing so, read, considered and based her decision to buy the crib bumper on the above cited representations and without knowledge of the dangers posed by the crib bumper. Plaintiff would not have purchased a Carter's Crib Bumper had she known that the products pose a significant risk of suffocation, strangulation and entrapment and should not be placed in the crib at all.

35. Defendants understood that consumers, including Plaintiff, would attach importance to the existence and truth of the representations made in deciding whether to purchase a Carter's Crib Bumper product and would consider such objective statements of fact material. However, Defendants' statements about Carter's Crib Bumpers were misleading because Carter's Crib Bumpers are not safe and, in fact, put children at a greater risk of suffocation or death.

36. Furthermore, by concealing and failing to disclose the true dangers posed by Carter's Crib Bumpers, Defendants have and continue to engage in deception by concealment.

37. As a result of the above described representations and material facts, Plaintiff and Class members either have or have likely been misled by Defendants' representations and material omissions into purchasing and paying for a valueless product that is not safe and poses risk of serious injury and death. Plaintiff and Class members

have suffered injury in fact in that they have spent money on Carter's Crib Bumpers that lacked values, characteristics, uses or benefits they were led by the Defendants to believe they had.

38. Defendants by contrast, reaped enormous profits from their false marketing and advertising campaign.

## CLASS ACTION ALLEGATIONS

39. Plaintiff brings this action on behalf of herself and all other similarly situated Class members pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class against Defendants for violations of California state laws and/or similar laws in other states:

> **Multi-State Class**
> All consumers who, within the applicable statute of limitations, purchased Carter's Crib Bumpers.
>
> Excluded from the Class are Defendants, their parents, subsidiaries, affiliates, officers and directors, and those who purchased Carter's Crib Bumpers for the purpose of resale.

40. In the alternative, Plaintiff brings this action on behalf of herself and all other similarly situated California consumers pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

> **California-Only Class:**
> All California consumers who, within the applicable statute of limitations, purchased Carter's Crib Bumpers.
>
> Excluded from the Class are Defendants, their parents, subsidiaries, affiliates, officers and directors, and those who purchased Carter's Crib Bumpers for the purpose of resale.

41. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

42. Members of the Class are so numerous and geographically dispersed that joinder of all Class members is impracticable. Plaintiff is informed and believes, and on

that basis alleges, that the proposed Class contains many thousands of members. The precise number of Class members is unknown to Plaintiff.

43. Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members. The common legal and factual questions include, but are not limited to, the following:

- Whether Defendants engaged or continue to engage in consumer fraud in the packaging, labeling, sale and marketing of Carter's Crib Bumpers;
- Whether Carter's Crib Bumpers are reasonably safe for use as directed;
- Whether Defendants falsely represented that Carter's Crib Bumpers are safe when installed as directed;
- Whether Defendants committed deception by concealment by knowingly concealing material facts regarding the safety risks posed by Carter's Crib Bumpers;
- Whether Defendants' alleged conduct violated public policy;
- Whether the claims discussed above about Carter's Crib Bumpers are true, or are misleading or reasonably likely to deceive;
- Whether the alleged conduct constitutes violations of the laws asserted herein;
- Whether Plaintiff and the Class have been injured as a result of Defendants' conduct;
- Whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss; and
- Whether Plaintiff and Class members are entitled to declaratory and injunctive relief.

44. The claims asserted by Plaintiff in this action are typical of the claims of the members of the Class, as the claims arise from the same course of conduct by Defendants, and the relief sought is common. Plaintiff and Class members suffered uniform damages

caused by their purchase of Carter's Crib Bumpers distributed, marketed, labeled, packaged and sold by Defendants.

45. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained counsel competent and experienced in both consumer protection and class litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

46. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually. It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

47. In the alternative, the Class also may be certified because Defendants have acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole. Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendants from engaging in the acts described, and requiring Defendants to provide full restitution to Plaintiff and Class members.

48. Unless the Class is certified, Defendants will retain monies received as a result of their conduct that were taken from Plaintiff and Class members. Unless a Class-wide injunction is issued, Defendants will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

## COUNT I

### Violation of Business & Professions Code §17200, *et seq.*

49. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

50. Plaintiff brings this claim individually and on behalf of the Class.

51. As alleged herein, Plaintiff has suffered injury in fact and lost money or property as a result of Defendants' conduct because she purchased one of Defendants' Carter's Crib Bumper products.

52. The Unfair Competition Law, Business & Professions Code §17200, *et seq.* ("UCL"), and similar laws in other states, prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising. In the course of conducting business, Defendants committed unlawful business practices by, *inter alia*, making the representations (which also constitutes advertising within the meaning of §17200) and omissions of material facts, as set forth more fully herein, and violating Civil Code §§1572, 1573, 1709, 1711, 1770(a)(5), (7), (9) and (16) and Business & Professions Code §§17200, *et seq.*, 17500, *et seq.*, and the common law.

53. Plaintiff and the Class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

54. In the course of conducting business, Defendants committed "unfair" business practices by, *inter alia*, making the representations (which also constitute advertising within the meaning of §17200) and omissions of material facts regarding Carter's Crib Bumpers in their advertising campaign, including the Products' packaging,

- 14 -

as set forth more fully herein. There is no societal benefit from false advertising, only harm. Plaintiff and other Class members paid for a valueless product that is not safe and poses risk of serious injury and death. While Plaintiff and Class members were harmed, Defendants were unjustly enriched by their false misrepresentations and omissions. Because the utility of Defendants' conduct (zero) is outweighed by the gravity of the harm Plaintiff and Class members suffered, Defendants' conduct is "unfair" having offended an established public policy. Further, Defendants' engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

55.  Further, as stated in this Complaint, Plaintiff alleges violations of consumer protection, unfair competition and truth in advertising laws in California and other states, resulting in harm to consumers. Defendants' acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers. This conduct constitutes violations of the unfair prong of Business & Professions Code §17200, *et seq.*

56.  There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

57.  Business & Professions Code §17200, *et seq.*, also prohibits any "fraudulent business act or practice."

58.  In the course of conducting business, Defendants committed "fraudulent business act or practices" by, *inter alia*, making the representations (which also constitute advertising within the meaning of §17200) and omissions of material facts regarding Carter's Crib Bumpers in their advertising campaign, including the Products' packaging, as set forth more fully herein. Defendants made the misrepresentations and omissions regarding the safety of their crib bumpers by, *inter alia*, misrepresenting on each and every Carter's Crib Bumpers' packaging and labeling that the products are safe if properly installed, when, in fact, the Products pose serious health risks, even the risk of infant death.

59. Defendants' actions, claims, omissions and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code §17200, *et seq.*

60. Plaintiff and other members of the Class have in fact been deceived as a result of their reliance on Defendants' material representations and omissions, which are described above. This reliance has caused harm to Plaintiff and other members of the Class who each purchased Defendants' Carter's Crib Bumpers. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of these unlawful, unfair, and fraudulent practices.

61. Defendants knew, or should have known, that their material representations and omissions would be likely to deceive the consuming public and result in consumers purchasing Carter's Crib Bumpers and, indeed, intended to deceive consumers.

62. As a result of their deception, Defendants have been able to reap unjust revenue and profit.

63. Unless restrained and enjoined, Defendants will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

64. Plaintiff, on behalf of herself, all others similarly situated, and the general public, seeks restitution and disgorgement of all money obtained from Plaintiff and the members of the Class collected as a result of unfair competition, an injunction prohibiting Defendants from continuing such practices, corrective advertising and all other relief this Court deems appropriate, consistent with Business & Professions Code §17203.

### COUNT II
### Violations of the Consumers Legal Remedies Act – Civil Code §1750 *et seq.*

65. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

66. Plaintiff brings this claim individually and on behalf of the Class.

67. This cause of action is brought pursuant to the Consumers Legal Remedies

Act, California Civil Code §1750, et seq. (the "Act"), and similar laws in other states. Plaintiff is a consumer as defined by California Civil Code §1761(d). Carter's Crib Bumpers are "goods" within the meaning of the Act.

68. Defendants violated and continue to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of the Carter's Crib Bumpers:

> (5) Representing that [Carter's Crib Bumpers have] ... approval, characteristics, ... uses [and] benefits ... which [they do] not have ....
>
> \* \* \*
>
> (7) Representing that [Carter's Crib Bumpers are] of a particular standard, quality or grade ... if [they are] of another.
>
> \* \* \*
>
> (9) Advertising goods ... with intent not to sell them as advertised.
>
> \* \* \*
>
> (16) Representing that [Carter's Crib Bumpers] have been supplied in accordance with a previous representation when [they have] not.

69. Defendants violated the Act by representing and failing to disclose material facts on the Carter's Crib Bumpers' labeling and associated advertising, as described above, when they knew, or should have known, that the representations were false and misleading and that the omissions were of material facts they were obligated to disclose.

70. Pursuant to California Civil Code §1782(d), Plaintiff and the Class seek a Court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement.

71. Pursuant to §1782 of the Act, Plaintiff notified Defendants in writing by certified mail of the particular violations of §1770 of the Act and demanded that Defendants rectify the problems associated with the actions detailed above and give notice

to all affected consumers of Defendants' intent to so act. Copies of the letters are attached hereto as Exhibit A.

72. If Defendants fail to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the Act, Plaintiff will amend this complaint to add claims for actual, punitive and statutory damages, as appropriate.

73. Defendants' conduct is fraudulent, wanton and malicious.

74. Pursuant to §1780(d) of the Act, attached hereto as Exhibit B is the affidavit showing that this action has been commenced in the proper forum.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff and the Class pray as follows:

A. Certifying the Class as requested herein;

B. That the Court adjudge and decree that Defendants have engaged in the conduct alleged herein;

C. Awarding restitution and disgorgement to Plaintiff and the other Class members;

D. Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of their conduct and pay them restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful;

E. Ordering Defendants to engage in a corrective advertising campaign;

F. Awarding attorneys' fees and costs; and

G. Providing such further relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Date: November 28, 2012

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.

*/s/ Patricia N. Syverson*

Elaine A. Ryan
Patricia N. Syverson
Lindsey M. Gomez-Gray
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
eryan@bffb.com
psyverson@bffb.com
lgomez-gray@bffb.com
Telephone: (602) 274-1100

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
Todd D. Carpenter
600 W. Broadway, Suite 900
San Diego, California 92101
tcarpenter@bffb.com
Telephone: (619) 756-6978

STEWART M. WELTMAN LLC
Stewart M. Weltman (*To be admitted Pro Hac Vice*)
122 S. Michigan Avenue, Suite 1850
Chicago, Illinois 60603
sweltman@weltmanlawfirm.com
Telephone: 312-588-5033
(Of Counsel Levin, Fishbein, Sedran & Berman)

SIPRUT PC
Joseph J. Siprut (*To be admitted Pro Hac Vice*)
Aleksandra M. S. Vold (*To be admitted Pro Hac Vice*)
17 North State Street, Suite 1600
Chicago, Illinois 60602
Jsiprut@siprut.com
avold@siprut.com
Telephone: (312) 236-0000

*Attorneys for Plaintiff*

- 19 -